IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  08-77 |
| RODNEY LAW | : | |

ORDER AND MEMORANDUM

**O R D E R**

**AND NOW**, this 17th day of April, 2008, upon consideration of the Government's Motion in Limine to Admit Prior Testimony of George L. Bobe (Document No. 25, filed April 8, 2008), and defendant's response, **IT IS ORDERED** that, for the reasons set forth in the attached Memorandum, the Government's Motion in Limine to Admit Prior Testimony of George L. Bobe is **DENIED**.

**MEMORANDUM**

**I.    INTRODUCTION**

On February 7, 2008 a grand jury returned an Indictment charging defendant with one count of possession with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), one count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Presently before the Court is the Government's Motion in Limine to Admit Prior Testimony of George L. Bobe.  For the reasons set forth below, the Government's Motion is denied.

II.     FACTUAL BACKGROUND

    A.     Officer Bobe's Suppression Hearing Testimony

On May 13, 2005, defendant filed a Motion to Suppress Physical evidence arguing that the seizure of a travel bag containing, inter alia, stacks of United States currency and cocaine base ("crack") by the Philadelphia Police when responding to a call on June 21, 2004 violated his Fourth Amendment rights. The Court held a suppression hearing in open court on July 8, 2005.[1] One witness – Officer George L. Bobe of the Philadelphia Police Department – testified at the hearing.

On direct-examination, Officer Bobe testified as follows:

At approximately 1:00 A.M. on June 21, 2004, Philadelphia Police Officers Bobe and Wilkins responded to a call about a person with a gun and a disturbance at the third floor of 5000 Master Street. (Hr'g Tr. 14, July 8, 2005.) Upon arriving at that location, the police heard "a little noise like a little argument." (Id.) Defendant and Tyeisha Falligan were in the apartment. Ms. Falligan said she was "all right" and they both denied that there was a gun in the apartment. (Id. at 16-18.) However, Ms. Falligan stated that she wanted her "stuff"– keys, which defendant had in his possession, and jewelry inside a green travel bag which defendant was holding. (Id. at 18.)

Defendant removed keys from his pocket and handed them to Officer Bobe to return to Ms. Falligan. (Id.) When Officer Bobe then went to "check the bag out" defendant was holding,

---

[1] The suppression hearing held before the Court on July 8, 2005 was conducted in Criminal Action No. 05-78. For reasons immaterial to the Court's ruling on the instant Motion, the indictment against defendant in Criminal Action No. 05-78 was subsequently dismissed and defendant was reindicted for the same crimes on February 7, 2008.

defendant said "okay, okay, here," and handed Ms. Falligan the bag. (Id.) Defendant looked a "little upset" as he offered Ms. Falligan the bag. (Id.)

After receiving the bag from defendant, Ms. Falligan, accompanied by Officer Wilkins, went into a bedroom in the apartment, opened the bag, and looked inside. (Id. at 18-19.) Ms. Falligan then partially closed the bag and placed the bag on the bedroom floor just outside a closet. (Id. at 19-20.) Officer Bobe then entered the bedroom and advised Ms. Falligan on how to obtain a "protection order." (Id. at 20.) While in the bedroom, Officer Bobe pointed his flashlight downward into the bag and observed within the bag two "big stacks" of United States currency bundled together with rubber bands. (Id. at 20, 27.) The stacks of currency were "not bent, not folded" and were approximately five inches thick. (Id. at 27.) Officer Bobe then opened the travel bag further and observed "a lot of more money." (Id. at 20, 27.)

When Ms. Falligan noticed that Officer Bobe had discovered the money in the travel bag, she began to "cry very hard . . . she really started to cry real heavy." (Id. at 20.) Officer Bobe instructed Ms. Falligan to sit down in the bedroom and not to move. (Id.) Officer Bobe left the bedroom, with the travel bag in his hand, to find his partner and defendant, who were near the bottom of the steps leading up to the apartment. (Id.) Officer Bobe went behind defendant and said "Yo, Dude, this bag." (Id.) Defendant turned around and "opened his eyes like real big." (Id.) Officer Bobe again asked, "Yo, Dude, this bag," and defendant again failed to answer. (Id. at 21.) At that point, Officer Bobe asked defendant to turn around and put his hands on top of a car. (Id.)

During the Government's direct-examination of Officer Bobe, defense counsel agreed to narrow "the issue for [the Court] to decide on the suppression motion" to whether "there [was]

3

anything in plain view and, if so, was what the officer saw in plain view incriminating." (Id. at 28.)  As a result of this agreement, the Court advised the Government that "the other issues . . . raised by the motion papers are now out of the case,"[2] (Id.), and that the Government should limit its questioning to pertinent issues concerning the travel bag.

On cross-examination, defense counsel first questioned Officer Bobe about how the travel bag was handed from defendant to Tyeisha Falligan.  Officer Bobe testified that defendant did not hand the bag to Ms. Falligan directly, but rather, that Officer Bobe grabbed the bag from defendant and handed it to her.  (Id. at 30.)  Defense Counsel then asked whether Ms. Falligan placed the bag inside or outside of the bedroom closet.  Officer Bobe testified that the bag "was half in the closet, half out." (Id. at 31.)  Finally, defense counsel questioned Officer Bobe about what he could see in the bag without using his flashlight and when exactly he opened the bag to look at its contents more closely.  Officer Bobe testified that he first turned on the flashlight and looked in the bag without bending over.  (Id. at 32-33.)  Thereafter, upon noticing the currency in the bag, Officer Bobe opened the bag further to look inside.  (Id. at 33.)  Officer Bobe testified that nothing in the bag had anything to do with getting an order of protection.  (Id.)

On re-direct examination, Government counsel questioned Officer Bobe about the lighting in the bedroom.  Officer Bobe testified that he was unable to see the money in the bag without using his flashlight.  (Id. at 34.)

**B.    Officer Bobe's Present Physical Illness**

In October of 2007, Officer Bobe was diagnosed with advanced terminal cancer.  (Gov.'s

---

[2] Other issues raised in defendant's Motion to Suppress included, inter alia, challenges to the officers frisking defendant outside of Ms. Falligan's building and the characterization of the search of defendant's bag as an inventory search.  (Hr'g Tr. 22, July 8, 2005.)

Mot. 2.)  On March 28, 2008, Officer Bobe permanently retired for medical reasons.  (Russell Dec. ¶ 4, Gov.'s Mot. Ex. B.)  As a result of his illness, Officer Bobe "is presently unable to perform even basic functions" and his "health is rapidly deteriorating."  (Id. ¶ 3.)  According to the Administrative Lieutenant responsible for overseeing administrative functions at Officer Bobe's former district, Officer Bobe is unable to testify at defendant's trial because of his present physical condition.  (Id. ¶ 5.)

### III.     APPLICATION OF FEDERAL RULE OF EVIDENCE 804(b)(1)

####    A.     Legal Standard

The admissibility of the prior testimony of a witness unavailable to testify at trial is governed by Federal Rule of Evidence 804(b)(1).  Rule 804(b)(1) provides, in relevant part, as follows:

> (b) Hearsay exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) Former testimony.  Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1).

The Third Circuit has explained that "[i]n order for former testimony to be admissible as an exception to the hearsay rule: (1) the declarant must be unavailable; (2) testimony must be taken at a hearing, deposition, or civil action or proceeding; and (3) the party against whom the testimony is now offered must have had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  Kirk v. Raymark Industries, Inc., 61 F.3d

147, 164 (3d Cir. 1995). The Government, as the proponent of the evidence in question, bears the burden of establishing admissibility. Id. at 164-66; United States v. Bartelho, 129 F.3d 663, 670 (1st Cir. 1997); United States v. Amato, 2006 WL 1788190, at *1 (E.D.N.Y. June 26, 2006).

**B.    Analysis**

The parties do not dispute that Officer Bobe's suppression hearing testimony constitutes "testimony given as a . . . witness at another hearing." Similarly, the parties agree that Officer Bobe is unavailable to testify because of his illness.[3] (Def.'s Resp. 4.) Thus, the Court finds that the Government has proved the unavailability and prior hearing elements of the former testimony hearsay exception. The Court will now address the question whether defendant "had an opportunity and similar motive to develop [Officer Bobe's] testimony by direct, cross, or redirect examination." Kirk, 61 F.3d at 164.

Defendant was represented at the suppression hearing by Joseph C. Santaguida, the same attorney who will represent him at trial. The Court placed no limitation on defense counsel's right to cross-examine Officer Bobe, and defense counsel did conduct a cross-examination on the factual issues pertinent to the Court's consideration of defendant's Motion to Suppress. (Hr'g Tr. 29-33.) Accordingly, the Court finds that defendant had a prior opportunity to cross-examine Officer Bobe. This satisfies the "opportunity" requirement in Rule 804(b)(1).

---

[3] Federal Rule of Evidence 804(a)(4) states that "'[u]navailability as a witness' includes situations in which the declarant is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." In support of its position that Officer Bobe is unavailable to testify because of his illness, the Government offers the Declaration of Saundra Russell, Administrative Lieutenant in the same district in which Officer Bobe recently served, explaining the nature of Officer Bobe's illness and the extent of his physical impairment. On the basis of the information presented in Saundra Russell's Declaration – the accuracy of which defendant does not contest – the Court finds that Officer Bobe is "unavailable as a witness."

Defendant argues that notwithstanding his opportunity to cross-examine Officer Bobe, the Court should deny the Government's Motion on the ground that defendant lacked a "similar motive" to cross-examine at the suppression hearing.  The Court agrees with defendant.

"The similarity of motive requirement assures that the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do at trial if the witness were available to be examined by that party." Kirk, 61 F.3d at 166 (quotation omitted).  "The 'similar motive' requirement is inherently factual and depends, at least in part, on the operative facts and legal issues and on the context of the proceeding." United States v. Geiger, 263 F.3d 1034, 1038 (9th Cir. 2001); see also United States v. Salerno, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring) ("Because 'similar motive' does not mean 'identical motive,' the similar-motive inquiry, in my view, is inherently a factual inquiry, depending in part on the similarity of the underlying issues and on the context of the . . . questioning.").  "The cross-examination at the prior proceeding – both what was undertaken and what was available but forgone," is a factor for the court to consider.  United States v. DiNapoli, 8 F.3d 909, 915 (2d Cir. 1993) (en banc).

At the suppression hearing, defense counsel "limit[ed] the suppression motion . . . to whether there was anything in plain view and, if so, what it was." (Hr'g Tr. 14.)  In so doing, defendant specifically abandoned other arguments raised in his motion, including his challenges to the officers attempting to frisk his person and conducting an inventory search of his bag.  Significantly, defendant also stressed at several points during the hearing that he believed there was no factual dispute to resolve at the hearing and that the issue before the Court was a legal question concerning whether Officer Bobe's observation of stacks of money in the bag satisfied the plain view exception to the warrant requirement.  (Id. at 3, 8, 40.)

The substance of defendant's cross-examination reflected his limited motive to cross-examine. Defendant's cross-examination only addressed the movement of the bag from defendant to Ms. Falligan, Ms. Falligan's placement of the bag in the closet, the officer's use of his flashlight and opening of the bag, and whether the bag contained information about getting a protection order. (Id. at 29-33.) The cross-examination did not generally attack Officer Bobe's credibility nor did it address the question of who owned the bag. Defendant also did not challenge Officer Bobe's recollection of defendant and Ms. Falligan's facial expressions and reactions to the officers' actions. For example, Officer Bobe testified that defendant looked "upset" when Officer Bobe took the bag and that Ms. Falligan cried when Officer Bobe saw the money. (Id. at 16, 18, 20-21.) That evidence, which was arguably incriminating with respect to defendant's relationship to the contents of the bag, had no bearing on the application of the plain view exception, the issue raised in defendant's Suppression Motion.

The Government argues that defendant's "motivation to cross-examine was . . . similar [at the suppression hearing], given the similarity of the substantive issues at stake – possession – at the previous proceeding." (Gov.'s Mot. 10.) The Government is incorrect in its assertion that "possession" was the "substantive issue[] at stake" at the suppression hearing. The Government conceded, before Officer Bobe testified, that defendant had standing to challenge the admission of the evidence. (Hr'g Tr. 12.) The Government acknowledged that for purposes of the hearing, it was immaterial whether the bag belonged to defendant or to Ms. Falligan. (Id.) Neither party addressed the issue of possession in its briefs and defendant did not raise the issue on cross-examination. Thus, while defendant would have a motive to cross-examine on the issue of possession at trial, no similar motive existed at the suppression hearing.

In support of its Motion, the Government cites three cases from other circuits admitting suppression hearing testimony at trial under Rule 804(b)(1). While the Court recognizes that suppression hearing testimony, in many circumstances, would satisfy the requirements of Rule 804(b)(1), it finds the decisions on which the Government relies unpersuasive in light of the testimony in this case.

In one case the Government cites, the Fourth Circuit upheld the admission of testimony after concluding that the cross-examination at the suppression hearing "was extensive" and that the witness "was fully cross-examined." United States v. Grandison, 783 F.2d 1152, 1156 (4th Cir. 1986). In a second case relied upon by the Government, the Ninth Circuit upheld the admission of testimony after noting that resolving the question raised at the suppression hearing – the admissibility of an eyewitness identification – required establishing the reliability of the evidence in a fashion comparable to what would be required at trial. United States v. Poland, 659 F.2d 884, 896 (9th Cir. 1981). In this case, in contrast to the cases cited by the Government, Officer Bobe was not "fully cross-examined" and the issues presented in defendant's suppression motion required limited factual development. Cf. Bartelho, 129 F.3d at 670 (affirming denial of admission of suppression hearing testimony at trial where "motive [of party against whom evidence was offered] at each proceeding, viewed in context, was actually quite different.")

In the final case the Government cites – a non-precedential case from the Fourth Circuit – the defendant did not cross-examine on the issue of possession at his suppression hearing because the issue at the hearing was consent. United States v. Solomon, 24 Fed. Appx. 148, 151 (4th Cir. 2001). Nonetheless, the Fourth Circuit concluded that the trial judge did not abuse his discretion in admitting the testimony because, "if for no other reason," defense counsel "had ample motive to cross-examine Mrs. Solomon on the possession issue" just "for protection in the

event of her unavailability at trial." Id.  The Court declines to apply the Fourth Circuit's reasoning to the facts of this case in light of the explicit agreement between the parties and the Court to limit the focus of the hearing to what Officer Bobe saw in plain view.  Based on that agreement, and the actual content of defendant's cross-examination, the Court concludes that "the earlier treatment of [Officer Bobe]" was not "the rough equivalent of what [defendant] would do at trial if [Officer Bobe] were available to be examined."  Kirk, 61 F.3d at 166.

The Court concludes that defendant lacked a "similar motive" to cross-examine Officer Bobe at the suppression hearing.  Accordingly, the Government has not established all of the elements of Rule 804(b)(1) and the Court denies the Government's Motion.[4]

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion in Limine to Admit Prior Testimony of George L. Bobe is denied.

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS, J.**

---

[4] Because the Court concludes that Officer Bobe's prior testimony is not admissible under Federal Rule of Evidence 804(b)(1), it does not reach the question whether admission of the testimony would violate the Confrontation Clause of the Sixth Amendment.